Judge Underwood,
delivered the opinion of the court.
Thts is a writ of error prosecuted to reverse an order of the Casey county court, made on the application of Coffey, condemning an acre of land owned by the plaintiffs in error, for an' abutment, and granting leave to erect a water grist mill. The proceedings had in the county court cannot be sustained. The law requires the person desiring to build a wafer grist mill, an’d not owning [the land on the,"opposite side of the stream, against which he would abut his dam, to give ten days previous notice to the proprietor thereof, if to be found in the county, and if not, then to his agent therein, if any he hath, of the intended application to the court for a writ of ad quod damnum. The law also requires the court to fix and name a day'on which the sheriffs inquest shall take place, upon the lands proposed for the abutment, which day is to he inserted in the writ of ad quod damnum. The law, likewise, requires the sheriff to notify the proprietor of the land, or his agent of the time he will proceed under the writ, if neither of them were present in court at the time the order was made. See 1st section of the act relative to mills, II Digest, 933. Now, it does not appear that any notice was ever given by Coffey, or the sheriff to the heirs of Shackleford, or any agent of theirs of the intended application for the writ of ad quod damnum, or of the proceedings had in the county, in virtue of it. Nor is it suggested that the heirs of Shackleford did not live in Casey county, and that they had no agent therein. Instead of the day being fixed by the court, for the meeting of the inquest, the order requires thejsheriff to em-pannel a jury on the ground, “on the-- day of ■--■ next, if fair, if not, on the next fair day.” The writ conforming to the order, commands the sheriff to “em-pannel twelve fit persons, freeholders, to meet on the ■-day of-next at, &c.”
It is thus clear, that the requisites of the statute have been disregarded. The effect of the proceeding, if it be conducted in conformity to law, is, upon payment of *41 the valuation of the acre of land, to vest the applicant with seisin in fee sinjple of the said acre of land. See 7th section of the act relating to mills. Hence it proper to exact a strict compliance with the statute,
In proceeding ^nie^grlst a mill, statute must be stricted complid with.
Inquest in °gSs“’nrj tofteseveral matters required to be given m charge to jury
Owsley, for plaintiffs..
No man's freehold should he taken [from him, unless the proceedings he clearly sanctioned by law. In the foregoing particulars, Coffey has .disregarded the law.
The proceedin'gs are, moreover, liable to other fatal •objections. The inquest does not show that the jury were charged as the Jaw requires. See Bibb vs. Montjoy, II Bibb, 3; Neal vs. Coger, I Marshall, 589.
Nor does the inquest respond to the several matters which the law requires should he given in charge. It does not inform us whether ordinary navigation will be obstructed: See Montjoy vs. Oldham, I Marshall, 535; Taylor vs. Major, I Marshall, 552.
The order of the Casey county court rendered at their September term, 1827, granting Jesse Coffey permission to build the mill and dam, in manner and form as specified in the report and inquest of the jury, on paying down to the heirs of Bennet Shackleford, deceased, the sum of $6; 50' cents, the valuation money for the acre of land condemned, is, therefore, reversed and set aside.
The plaintiffs must recover their costs.